IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JERRY NEWMAN, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) NO. CIV-05-0541-HE |
| | ) |
| STATE FARM FIRE AND | ) |
| CASUALTY COMPANY, | ) |
| | ) |
| Defendant. | ) |

## ORDER

Plaintiffs were insured under a homeowners policy issued by defendant State Farm Fire and Casualty Company ("State Farm"). After their home was destroyed by a fire on March 19, 2004, plaintiff sought coverage for their loss under the policy. While their claim was still pending, plaintiffs filed this lawsuit alleging breach of contract and bad faith arising from the defendant's alleged improper handling of the claim. After receiving notice of the lawsuit, defendant denied plaintiffs' claim based on plaintiffs' alleged "motive and opportunity" to set fire to their home and their alleged "fraud and false swearing" in the claim process. Def's. Ex. 9. Defendant now moves for partial summary judgment on plaintiffs' bad faith claim, arguing it had a good faith basis for investigating and denying plaintiffs' claim.

Summary judgment is appropriate only when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The evidence and any reasonable inferences that might be drawn from it are

viewed in the light most favorable to the nonmoving party. Simms v. Okla. ex rel. Dep't of Mental Health and Substance Abuse Servs., 165 F.3d 1321, 1326 (10th Cir. 1999). Having applied the Rule 56 standard to determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law," Bingaman v. Kansas City Power & Light Co., 1 F.3d 976, 980 (10th Cir.1993) (internal quotation and citation omitted), the court concludes the defendant's motion for partial summary judgment should be granted.

## Background

The following facts are largely undisputed. On the date of the fire, plaintiffs insurance agent, Donald Creel, met plaintiffs at their home and gave plaintiffs a $1,000.00 advance on their claim. Claim representative Jeff Patton was assigned to plaintiffs' claim and also met plaintiffs at their home on that date to explain the claims process and applicable coverage. On March 22, 2004, Mr. Patton hired B. W. Scott to investigate the cause and origin of the fire.[1] Mr. Scott reported that the fire appeared to have started in the kitchen. Def's. Ex. 7. Although he noted evidence of "excessive heat damage" and higher than normal temperatures in the area of the stove,[2] he was unable to determine, due to the extent

---

[1]*Assistant Fire Chief Darrell Meadows had issued a report on March 19, 2004, stating that the cause of the fire could not be determined by fire officials because the structure was "to far gone" upon their arrival at the scene. Def's. Ex. 3.*

[2]*In particular, he noted that two cast iron skillets which had been resting on the stove top were partially melted with one having a "melted imprint of the burner" on its underside. Def's. Ex. 7 at 3.*

of the damage, either the exact area or point of origin of the fire. Id. at 4. Based on his investigation, Mr. Scott classified the cause of the fire as "undetermined." Id. at 5.

On April 28, 2004, Mr. Patton received authorization to settle the plaintiffs' claim. However, before settlement could occur, Mr. Patton received a report from Mr. Creel that plaintiffs may have hired someone to set fire to their home.[3] The claim was then reassigned to Dee Wayne Hugo in State Farm's "Special Investigations Unit" who started an investigation into these reports. Mr. Hugo conducted several taped interviews with persons allegedly having knowledge of Ms. Newman's suspicious conduct in the months before and after the fire.[4] In particular, those persons told Mr. Hugo that Ms. Newman had allegedly attempted to hire at least two people to burn down the house[5] and had borrowed a large sum of money after the fire in order to pay off the arsonist.[6] In addition, Mr. Hugo learned that

---

[3]*Stephanie Knight, a former employee of Mr. Creel, reported that two people told her that Rudy Smith, the owner of a local bar and a convicted felon, had set fire to the plaintiffs' home by tampering with the wiring in the stove. She was told that Ms. Newman owed Mr. Smith either $10,000 or $15,000 for setting the fire and was seeking to borrow money in order to pay him. Def's. Ex. 10.*

[4]*Although plaintiffs take issue with the credibility of these witness statements, they do not dispute that the statements were conveyed to Mr. Hugo during the course of his investigation.*

[5]*Ava Shaffer stated that she and Ms. Newman went to the "Crick" bar in the months before the fire because plaintiff had heard that the she could hire Mr. Smith to set fire to her home. When Ms. Newman was unable to locate Mr. Smith, Ms. Shaffer claims Ms. Newman offered another unidentified man $10,000 to set fire to the home but he refused. Def's. Ex. 11.*

[6]*Pamela Snyder stated Ms. Newman told her after the fire that she had hired Mr. Smith to burn down the house and that he was threatening harm if she did not pay. Ms. Snyder further stated that Ms. Newman attempted to borrow money from her husband in order to pay Mr. Smith. Def's. Ex. 12. Robert McDonald also stated that plaintiff had asked to borrow money from him after the*
(continued...)

Ms. Newman and her children had not lived in the home for several months and that Mr. Newman did not live there on a consistent basis.[7] Certain of their belongings had also been moved either to a storage unit or to the mobile home or rental home at the time of the fire. As the investigation progressed, Mr. Hugo hired Glenn Hardin, a licensed professional engineer, to further analyze the fire scene. Based on his investigation, Mr. Hardin reported to Mr. Hugo that a burner on the stove was in the "on" position at the time of the fire and could have been the ignition source for the fire. Def's. Ex. 30. Mr. Hardin could not determine whether the burner had been turned on by the dial or had come on spontaneously. However, no one had been present in the home or had used the stove in the several days leading up to the fire.

During the course of the investigation, State Farm requested a sworn Proof of Loss from the plaintiffs, as required under the insurance contract, and several documents and records it deemed pertinent to a resolution of the claim. Plaintiffs, who were represented by a public insurance adjuster, took several months to provide the requested information. However, State Farm continued to pay the plaintiffs' living expenses until the claim was denied.

---

[6](...continued)
*fire but he refused. Def's. Ex. 15.*

[7]*According to plaintiffs' recorded statements, they were separated during the time frame of the fire. During the separation, Ms. Newman and the children lived in, at various times, either a mobile home or a rental home. Mr. Newman stayed both at the original home and at the temporary homes with Ms. Newman and the children during this time frame. However, no one was home on the night of the fire.*

4

## Discussion

The tort of bad faith was first recognized by the Oklahoma Supreme Court in Christian v. Am. Home Assurance Co., 577 P.2d 899, 904 (Okla. 1978).[8] It arises from the insurer's implied duty to deal fairly and act in good faith with its insured. Oulds v. Principal Mut. Life Ins. Co., 6 F.3d 1431, 1436 (10th Cir. 1993). The duty is not breached if the insurer refuses to pay a claim or litigates a reasonable and legitimate dispute with its insured over coverage or the amount of the claim. Id. In other words, "[t]he insurer will not be liable for the tort of bad faith if it 'had a good faith belief, at the time its performance was requested, that it had a justifiable reason for withholding payment under the policy.'" Id. (quoting McCoy v. Okla. Farm Bureau Mut. Ins. Co., 841 P.2d 568, 572 (Okla. 1992)).

When presented with a motion for summary judgment on a bad faith claim, the court initially must decide, under the facts and as a matter of law, whether the defendant's conduct may be reasonably perceived as tortious. Oulds, 6 F.3d at 1436-37. Its actions are evaluated in light of the facts it knew or should have known at the time it was asked to perform its contractual obligations. Id. at 1437. In this case, the defendant contends that a legitimate dispute existed regarding its duty to pay under the policy. The court agrees.

The record reflects that State Farm did not seek to deny plaintiffs' claim from the outset.[9] Instead, it was ready to pay the claim until it received reports that plaintiffs may

---

[8]*As this is a diversity action the substantive law of the State of Oklahoma applies.*

[9]*In Capstick v. Allstate Ins. Co., 998 F.2d 810 (10th Cir. 1993), cited by plaintiffs, the Tenth*
(continued...)

5

have hired someone to set fire to their home. As no cause for the fire, either accidental or incendiary, could be definitively determined based on the extent of the damage, it was reasonable for the defendant to investigate these reports in order to determine whether it would be required to pay benefits under the policy.[10] See, e.g., Willis v. Midland Risk Ins. Co., 42 F.3d 607, 611 (10th Cir.1994) (an insurer has the right to resist payment and litigate any claim to which it has a reasonable defense).

For their part, plaintiffs allege that the statements of the persons incriminating them were so incredible it was unreasonable for Mr. Hugo to give them any credence whatsoever.[11] However, Ms. Newman admitted going to the Crick bar with Ms. Shaffer and admitted contacting Mr. Smith. Def's. Exs. 6 & 39. While plaintiffs assert innocent explanations for all of these actions,[12] it was not unreasonable for Mr. Hugo to inquire into the evidence surrounding plaintiffs' motive and opportunity to burn their home.

---

[9](...continued)
*Circuit approved the submission of a bad faith claim to the jury based on evidence that the insurer had treated a fire claim as suspicious from the start without any investigation or interviewing of witnesses and had simply picked an expert who was not given any information about the circumstances of the fire.* Capstick, *998 F.2d at 813-15. Such is not the case here.*

[10]*The policy precludes benefits for losses "caused or procured" by the insured for the purpose of obtaining insurance benefits. Def's. Ex. 2.*

[11]*For purposes of summary judgment, the court considers these statements not for their truth but for the fact that they were made. See* Starr v. Pearle Vision, Inc., *54 F.3d 1548, 1556 (10th Cir. 1995) (statement which was not offered for the truth of the matter asserted but instead for the mere fact that it was made was nonhearsay and properly considered for purposes of summary judgment).*

[12]*Plaintiffs maintain that Smith was contacted to do some remodeling on their home and that Ms. Newman does not know who owns the Crick bar.*

Plaintiffs further allege that the defendant should not have delayed payment of their claim based on the reports of arson because no incendiary cause for the fire could be determined. They state that in order for the defendant to assert the defense of arson in denying a claim, Oklahoma law requires evidence of an incendiary cause. Plaintiffs misunderstand the issue to be decided by the court. While defendant may have to prove an incendiary cause in order to prevail on a breach of contract claim,[13] it need not prove such a cause for its actions to be deemed reasonable for purposes of a bad faith claim. Instead, it need only show that it had a reasonable basis for disputing coverage. See, e.g., Timberlake Constr. Co. v. U.S. Fid. and Guar. Co., 71 F.3d 335, 343 (10th Cir. 1995) ("'The essence of the tort of bad faith, as it is recognized in Oklahoma, is the unreasonableness of the insurer's actions.'") (quoting Conti v. Republic Underwriters, Ins. Co., 782 P.2d 1357, 1360 (Okla. 1989)).

"Given the facts known to [State Farm] at the time a decision on payment was required, there was a legitimate dispute concerning coverage, which the insurance company had a right to have settled in a judicial forum." Oulds, 6 F.3d at 1440. See Manis v. Hartford Fire Ins. Co., 681 P.2d 760, 761-62 (Okla. 1984). Because the undisputed facts demonstrate that a legitimate dispute existed as to coverage, plaintiffs have failed to establish

---

[13] *See, e.g., Eaves v. Fireman's Fund Ins. Cos., 148 Fed. Appx. 696, 700, 2005 WL 2146058, at *3 (10th Cir. Sept. 7, 2005) (unpublished disposition cited for persuasive value only pursuant to 10th Cir. 36.3(B)) (noting that an insurer who asserts non-liability under a fire policy based on its position that the fire resulted from an incendiary origin bears the burden of producing evidence and proving this affirmative defense at trial by a preponderance of the evidence) (citing Pac. Ins. Co. of New York v. Frank, 452 P.2d 794, 796 (Okla. 1969)).*

7

that State Farm breached its duty of good faith by refusing to pay plaintiffs' claim. Accordingly, summary judgment is **GRANTED** in favor of defendant on plaintiffs' bad faith breach of contract claim. See Oulds, 6 F.3d at 1437 ("Until the facts, when construed most favorably against the insurer, have established what might reasonably be perceived as tortious conduct on the part of the insurer, the legal gate to submission of the issue to the jury remains closed.").

**IT IS SO ORDERED.**

Dated this 31st day of October, 2006.

JOE HEATON
UNITED STATES DISTRICT JUDGE